MARION BURBRIDGE, ET AL., *v.* H. W. VARNON'S EX'R.

**Committee of Lunatic—Bond of Committee.**

Where a person is serving as committee of a lunatic and while so serving petitions the court for and receives authority to sell property of such lunatic in connection with two other persons, the three being styled commissioners, and the sale is made and the money collected by the committee from the buyers of the property or from the other members of the commission, the committee is liable to account for such money.

**Bond of Committee.**

A person becoming surety for a committee of a lunatic, where such committee, in connection with two other persons styled commissioners, to sell personal property of such lunatic, sells such property and collects the money therefor, is liable on his bond whether the committee collects the money or fails to do so, when it was his duty to collect and preserve such funds.

APPEAL FROM SCOTT CIRCUIT COURT.

September 26, 1874.

OPINION BY JUDGE LINDSAY:

In November, 1846, Marion Burbridge was, by the verdict of a jury and the judgment of the Scott Circuit Court, found to be a lunatic, and Oscar H. Burbridge was appointed her committee, and gave bond as such with his father, Robert Burbridge, as surety.

Marion Burbridge was then the owner of a large estate consisting of land, slaves and personalty, the income from which seems to have been more than sufficient for her support. On March 1, 1850, the legislature passed an act for her benefit, which authorized the judge of the Scott Circuit Court to decree a sale of the slaves of the said Marion Burbridge, if, upon a petition filed and sworn to by O. H. Burbridge, her trustee, and upon oral and other proof it shall appear to the interest of said Marion Burbridge for such sale to be made; and he may make such further orders and decrees in the cause as may seem to him advisable to secure properly and

safely the proceeds of sale, by requiring bond, with security, from her trustee or committee, and may also appoint, if necessary, some other person to act as trustee in place of Oscar H. Burbridge. Sess. Acts 1849-50, p. 226. · In pursuance of this act, a decree was rendered on November 20, 1850, directing a sale of the slaves, and appointing O. H. Burbridge, Jesse S. Sinclair, and John W. Sinclair as commissioners to make the sale. They sold the slaves and made report thereof to the August term of the court, 1851. The sale was on a credit of two years, and amounted to the sum of $10,230. The court, in the order of sale, reserved full power over this cause, the proceeds of sale, and the disposition thereof. On March 1, 1853, the case was referred to the master commissioner, to settle with Oscar Burbridge his accounts as committee of Marion Burbridge, and report the same to court, and it was also ordered that Oscar Burbridge and Jesse S. Sinclair be appointed commissioners to collect the sale money for the slaves, and loan out the same, on good security being given. The commissioner, Jesse S. Sinclair, was required to execute bond therein for the faithful performance of his duties. On the day after this order was made, the master reported a settlement with O. H. Burbridge, which showed a balance in his hands at that date, of $564.76. In this settlement, no account was taken of the proceeds of the sale of the slaves, which, however, had not then been collected. No other order seems to have been made in the case until May 29, 1861, when the following was entered: "This day O. H. Burbridge, in response to the rule herein, appeared, and with H. W. Varnon as his surety, executed and acknowledged his bond, which is approved; and it is ordered that this cause be referred to the master commissioner, George E. Prewett, with directions to, state and settle the accounts of said O. H. Burbridge, committee of said Marion Burbridge, and report to court."

On May 19, 1862, the commissioner reported that he ·had been unable to bring the committee to a settlement. On May 20, 1865, a rule was made against O. H. Burbridge requiring him to appear in court on the first day of the next ensuing term of the court to show cause, if he could, why he should not be removed from his office of committee. Failing to appear in response to the rule he was removed, and Jesse S. Sinclair was appointed and gave bond and qualified as committee in his stead. On the same day the commissioner filed a report in which he again reported his inability to bring O. H. Burbridge to settlement, and recommended

that he should be removed, not for any wilful negligence on the part of the committee, but from the fact that he was so largely engaged in business (and now in a distant state), that it was impossible for him to devote proper attention to this matter.

On May 19, 1868, this suit was brought by Jesse S. Sinclair for himself, and as committee of Marion Burbridge, against O. H. Burbridge, and his surety, H. W. Varnon. It is alleged in the petition, after a recital of the more important of the foregoing facts, that the sale money for the slaves was all collected by O. H. Burbridge and the plaintiff, Sinclair; that no settlement, binding upon all concerned, had been made between them, but that a settlement satisfactory to themselves had been made; and that said O. H. Burbridge, as committee as aforesaid, would fall in debt to the said Marion Burbridge about $10,000; that on May 28, 1861, O. H. Burbridge, by the order of the court, executed a bond as committee of Marion Burbridge with H. W. Varnon as his surety, which is also here filed, and which he is advised binds the said Varnon for all moneys received by the said O. H. Burbridge, as committee aforesaid, for the faithful discharge of his duty as committee, and the performance of all orders and decrees of this court touching the trust in his hands; that Burbridge is insolvent, and the amount in his hands will be lost, unless Varnon is held liable for it; that various unavailing efforts have been made to procure a settlement with O. H. Burbridge; and praying for a settlement of the accounts of said Burbridge and Jesse S. Sinclair in order to ascertain how much each is liable for, and for judgment against O. H. Burbridge and his surety, H. W. Varnon, for whatever sum might be found due from Burbridge.

In his answer, Varnon admits that it is probably true as alleged, that said sale money was all collected and received by said Burbridge and Sinclair, but whatever amount came into the hands of said Burbridge was received and collected by him, as commissioner, under the authority of the decree and orders made in the proceeding for a sale of said negroes, and not under, or by virtue of any power or authority he may have had as committee of said Marion. He states that all the money and estate that came to the hands of said Burbridge, as committee of said Marion, has long since been settled, accounted for and paid over, and whatever amount may, upon settlement, be found owing said Marion, he will owe not as committee, but as commissioner.

He also states that O. H. Burbridge, in compliance with the rule

before adverted to, "did, in the year 1861, execute an additional bond in lieu of the original bond executed by him in 1846, as the committee of said Marion; and said additional bond, stipulating, in substance, the faithful performance of said Burbridge of his duties as committee of said Marion, was executed by this defendant as his surety." He refers to said bond, and makes it part of this answer, and he submits the question of its effect, construction and operation, to the decision of the court. He denies, as advised, that said bond binds him, or renders him in any way liable for any part of the proceeds of the sale of said negroes. He refers to all the records and papers of all the various suits, motions and proceedings which have been instituted in this court, relating to the estate and property of said Marion Burbridge, and makes the same part of this answer, and he admits that O. H. Burbridge has become insolvent.

The case was subsequently referred to a commissioner, and a report was made showing an indebtedness on the part of O. H. Burbridge on account of money received by him for sale of the slaves under the decree of 1850, the sum of $9,169.85, and that there was a balance in his hands, received from other sources, of $456.20. It was admitted on the record that O. H. Burbridge was solvent in 1861, when the bond was executed with Varnon as surety. Upon this state of fact the cause was heard in the circuit court, and judgment was rendered against both Burbridge and Varnon for the sum of $456.20 and against O. H. Burbridge for the sum of $9,169.85, received from the sale of slaves, and the petition as to this latter sum was dismissed so far as Varnon was concerned. The only question on the appeal is as to the correctness of the judgment discharging Varnon from his alleged liability for the latter sum. On a former hearing in this court the judgment was affirmed on the ground that the petition was defective, because it did not set out the conditions and stipulations of the bond on which appellee was surety for O. H. Burbridge; but upon a careful re-examination of the petition and answer, we are of opinion that any defects which existed in the petition are cured by the answer, in the references to the bond made therein which we have already quoted.

It is insisted for appellant that the committee, O. H. Burbridge, must be taken to have held the money which came to his hands from the sale of the slaves under the decree of the Scott Circuit Court, as committee of Marion Burbridge; or if he did not, then,

as he was both complainant in the proceedings to sell the slaves, and committee under the appointment in 1846, it was his duty to have gotten the fund into his hands as committee, so that in any event he and his surety ought to be held liable. On the other hand it is contended that, as Burbridge was appointed a commissioner, in conjunction with Sinclair, to collect the money and loan it out, and as it is nowhere shown that he ever held it as committee, his surety is not liable. The bond recites that Burbridge had been required by the court to execute bond, and then stipulates that O. H. Burbridge, as committee of Marion Burbridge, shall faithfully discharge the duties of his station as committee as aforesaid, perform all orders and decrees of the Scott Circuit Court in said case, and pay all money that may come to his hands when required by said court. This bond was executed under a rule to give bond, which issued in the case in which a sale of the slaves had been decreed, and binds the committee to perform the orders and decrees made in that case and to pay over all money that might come to his hands. The bond being executed in that case, must be construed in the light of the record; and when this is done it seems to us clear, not only that it was intended to secure any money which he might receive, but that it amounted to a recognition by the court of his right and duty to hold the money as committee. Counsel for appellee are mistaken in supposing that the committee had no right, as such, to the money arising from the sale of the slaves. The act expressly recognizes his right to control the fund just as he could other estate of the lunatic. It is true, the act gives the court power to make all needed orders for securing the fund, but the mode of doing so is prescribed by the act itself. The court was not vested with general power to secure the fund as to it might seem advisable, but the authority is to make orders to secure the fund by requiring bond with security from her trustee or committee. This was all the power the act gave to the court over the proceeds of the sale; and that the intention of the legislature was that it should go into the hands of the committee, is made still more manifest by the succeeding clause, which gives the court power to appoint, if necessary, some other person to act as trustee, in the place of said Oscar H. Burbridge, the word trustee being used in the act as synonymous with committee. So long as O. H. Burbridge remained in office as committee, the act contemplated that he should control the fund, subject only to the right and duty of the court to require surety of him, and, if necessary to secure the fund, to remove him and ap-

point another; and although he collected the money originally under the order of the court which styled him "commissioner," yet he would have been responsible for it on his former bond as committee.

He was committee when the money came to his hands, and as he had a right to it as committee, he must be taken to have so held it all the while. He was solvent when the bond with appellee as surety was given, and must be presumed then to have held the money in hand or to have loaned it out, and it results that appellee is responsible for it. But if we are mistaken in this, and he is to be taken as holding up to this time as commissioner, the execution of the bond in this case shows that both the court and the committee regarded him as having a right to it as committee; for if he had not, the bond was wholly unnecessary in the case in which it was given, for there could have been no other liability to secure by it. He had a right not only to hold the money he had himself collected, but a clear right to compel Sinclair to pay over to him so much of it as he had collected, subject alone to the power and duty of the court to require sufficient bond. It was then his plain duty to get the fund into his hands as committee, and as he was then solvent it must be presumed he did so. But even conceding that he did not do so, it was certainly his duty to do it, and he is responsible on his bond for neglecting to do so. It would hardly be contended, if a third person had held this fund, and had been in a failing condition, and the committee had been aware of that fact and had failed to make any effort to secure the fund, that he would not have been liable for its loss. The fact that the committee was himself the debtor (if he be treated as holding the money as commissioner) can make no difference; it was as much his duty in a faithful discharge of the obligations of the trust to secure what he himself owed, as it would have been to secure it if a stranger had been the debtor. He had instituted the proceedings and procured the sale, and ought to have looked to the security of the fund. The court was proceeding against him and would, no doubt, of its own motion, have compelled him, while he was yet solvent, to bring the money into court, and was actually endeavoring to do so by repeated efforts to get a settlement. In this state of the case, appellee, by executing the bond in question, put it in the power of the recusant committee to hold on to the money, and must have understood that such would be the effect of his bond. He knew he was giving a bond in the case in which a decree had been rendered for the sale of the

slaves; there was no other fund in that case to be secured by the bond, and there is not even a hardship in now holding him liable. Wherefore the judgment dismissing appellants' petition as to the sum of $9,169.85 is *reversed* and the cause is remanded with directions to render judgment against the appellee, H. W. Varnon, for that sum, with interest thereon at the rate of 6 per cent. per annum from the first day of January, 1868, until paid.

*J. F. Robinson, W. S. Darnaby, for appellants.*
*Breckinridge, Buckner, for appellee.*